UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| SOUTH TEXAS ELECTRIC COOPERATIVE, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. V-06-28 |
| DRESSER-RAND COMPANY | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Dresser Rand's Motion for Judgment as a Matter of Law, To Alter or Amend Judgment, or For a New Trial (Dkt. #58). After considering the motion, response and applicable law, the Court is of the opinion that the motion should be DENIED.

### Factual and Procedural Background

This case arises out of a contract between South Texas Electric Cooperative ("STEC") and Dresser-Rand Company ("Dresser") under which Dresser was to design and construct a steam turbine unit at STEC's Sam Rayburn Power Plant. The contract required Dresser to provide equipment, materials, and field services free from defects. When the steam turbine was first put into service, it experienced excessive vibration, and STEC promptly notified Dresser about the problem. The parties frequently communicated about the vibration over a two year period, but eventually STEC grew dissatisfied with Dresser's response, and it hired outside consultants to repair the turbine. STEC sued Dresser for breach of contract and breach of warranty seeking reimbursement for the cost of repairing the steam turbine.

On September 7, 2007, the Court denied Dresser's Motion for Summary Judgment in part,[1] finding fact issues as to whether STEC substantially complied with the notice provisions of the contract and whether STEC waived its rights to reimbursement for failing to notify Dresser that it was hiring outside consultants to resolve the vibration. The Court also found that STEC was legally excused from complying with the contractual dispute resolution procedure; however, this issue was also argued and submitted to the jury at trial.

On December 4, 2007, the Court called this case for trial by jury. The jury heard four days of testimony and on December 10, 2007, the jury reached a unanimous verdict in favor of STEC. Specifically, the jury found that: (1) Dresser had breached the contract and its warranty; (2) STEC's notice was effective and in substantial compliance with the contract; (3) STEC had not waived its right to reimbursement; and (4) STEC's failure to comply with the dispute resolution procedures was excused. The jury awarded STEC $706,406.46 for the reasonable and necessary costs expended to repair the steam turbine.

Dresser now moves for judgment as a matter of law under Federal Rule of Civil Procedure ("FRCP") 50, or, in the alternative, for a new trial under FRCP 59. First, Dresser asserts the evidence undisputably shows that STEC did not comply with Section 13.03B, requiring STEC to notify Dresser that it was relieving Dresser of its obligation to resolve the vibration and intended to hire outside consultants. Second, the evidence shows that STEC never complied with Section 9.04, requiring dispute resolution by the Engineer as a condition precedent to the exercise of STEC's legal rights. Dresser maintains the verdict is contrary to the evidence and impermissibly rewrites the

---

[1] The Court granted Dresser's motion for summary judgment with respect to STEC's claims for consequential damages, and its negligence and breach of implied warranty causes of actions. (Dkt. # 27).

agreement between STEC and Dresser.  Dresser seeks judgment as a matter of law because there was no legally sufficient evidentiary basis for the jury to find for STEC, or, in the alternative, seeks a new trial because the verdict is against the great weight of the evidence and damages are excessive.

**Legal Standards**

### A.  Judgment as a Matter of Law

The court may grant a motion for judgment as a matter of law if the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable jurors could not arrive at a different verdict. *Arsement v. Spinnaker Exploration Co., L.L.C.*, 400 F.3d 238, 248-49 (5th Cir. 2005).  However, if there is evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach difference conclusions, judgment as a matter of law must be denied.  *Boeing v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969), overruled on other grounds, 107 F.3d 331 (5th Cir. 1997).  The court will consider all of the evidence, and draw factual inferences in favor of the verdict. *DP Solutions, Inc. v. Rollins, Inc*., 353 F.3d 421, 427 (5th Cir. 2003).  The court, however, leaves credibility determinations, the weighing of the evidence, and the drawing of all legitimate inferences from the facts to the jury. *Id.* A mere scintilla of evidence, however, "'is insufficient to present a question for the jury'" as "'there must be a conflict in substantial evidence to create a jury question.'" *Id*. (quoting *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 804 (5th Cir. 1997)).

### B.  New Trial

Rule 59(a) provides that the court may grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." FED. R. CIV. P. 59.  Therefore, the court may grant a new trial if it finds that the verdict is against the

weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course. *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). When a party moves for a new trial on evidentiary grounds, the court will not grant a new trial unless "the verdict is against the great weight of the evidence." *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998). Courts are to decide whether to grant a new trial based on their assessment of the fairness of the trial and the reliability of the jury's verdict. *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991). The decision to grant or deny a motion for new trial lies within the discretion of the court. *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982). In determining whether to grant a motion for new trial, the court must view the evidence in the light most favorable to the jury's verdict, and the verdict must be affirmed unless the evidence points so strongly and overwhelmingly in favor of the other party that the court believes that reasonable persons could not arrive at a contrary conclusion. *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992).

### C. Alter or Amend Judgment

The court has considerable discretion to grant or to deny a motion to alter or amend the judgment under Rule 59(e). *See Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993). The court, however, must "strike the proper balance between the need for finality and the need to render a just decision on the basis of all the facts." *Id.* at 355. A motion to alter or amend judgment must "clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (citation omitted).

**Discussion**

**I.     Section 13.03B Notice**

Dresser argues it is entitled to judgment as a matter of law because STEC did not give notice under Section 13.03B of the contract. Section 13.03B, under the heading "Remedying Defective Equipment and Materials" provides: "If Contractor (i.e. Dresser) fails to take action to either correct the defect or remove the Equipment and Materials and replace it with nondefective Equipment and Materials, Owner (i.e. STEC) may, after ten days written notice to Contractor, remedy any such deficiency instead of requiring removal or replacement."[2] According to Dresser's interpretation of Section 13.03, STEC had two notice obligations under the contract in the event of a defect with the equipment: (1) it had to notify Dresser of the defect, triggering Dresser's obligation to correct the defect at Dresser's expense; and (2) it had to give notice to Dresser that its efforts were not succeeding, and ten days thereafter it could hire its own consultants to fix the problem at Dresser's expense.

The Court instructed the jury that "strict compliance with written notice provisions is not required if the receiving party was given or had actual notice. If notice was in substantial compliance with the terms of the contract and performed the function for which the contract notice requirement was intended, it is effective." *Interstate Contracting Corp. v. City of Dallas, Tex.*, 407 F.3d 708, 727 (5th Cir. 2005) ("Substantial compliance excuses deviations from a contract's provisions that do not severely impair the contractual provision's purpose and is the legal equivalent of compliance unless otherwise provided."); *Chappell Hill Bank v. Lane Bank Equip. Co.*, 38 S.W.3d 237, 242 (Tex. App.– Texarkana 2001, pet. denied) ("Substantial compliance with the

---

[2] Dkt. # 58, Ex. 1.

requirements of a contract is the legal equivalent of full compliance.") (citation omitted). Notice is customarily a jury issue. *Eastern Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 976 (5th Cir. 1976). The evidence in this case established that STEC continually notified Dresser about the excessive vibration, and it was only after almost two years of little substantive help from Dresser that STEC hired outside consultants to fix the problem. (Vol. I, p. 190, 196; Vol. II, pp. 278–79, 350, 443–44, 490–96). Internal Dresser emails, additionally, indicated that Dresser was aware of the root cause of the vibration during the manufacturing of the turbine. (Vol. III, pp. 590–93, 634–35). There was also evidence that Dresser representatives were present at the STEC facility when the outside consultant, Bentley Nevada, was performing diagnostic tests on the turbine. (Vol. I, pp 232–34). Brian Basel, the project engineer testified that Dresser's, Richard Pielow, agreed to be responsible for the Bentley Nevada charges. Further, in January, 2005, STEC wrote in one of its many communications to Dresser that it "had conducted several additional vibration studies with multiple consultants." (Vol. II, p. 358). Thus, STEC did provide notice to Dresser that a defect existed and indicated in several communications that it was using outside consultants to diagnose and repair the vibration.

Dresser asserts that STEC was required to notify Dresser of its election to "remedy the deficiency [itself] instead of requiring removal or replacement." However, while Dresser attempts to read specific information into the Section 13.03B notice provision, the contract only provided that Owner must give Contractor ten days written notice when the Contractor has failed to take remedial action. (*See* Vol. I, p. 235 giving Dresser until September 26, 2003 to resolve the problem; Vol. II, pp. 287–88). The plain language of the contract did not specify what the written notice required before STEC could proceed to remedy the defects itself. Dresser, moreover, spent a great portion

6

of the trial and its closing argument highlighting the fact that it believed STEC did not comply with the Section 13.03B notice provision. The jury was fully aware of Dresser's position, but the jury still found that STEC's notice to Dresser was effective and in substantial compliance with the contract. Thus, the evidence was sufficient for a reasonable juror to determine that STEC gave effective notice, in substantial compliance, with the contract.

Dresser relies on *PYCA Indus., Inc. v. Harrison County Waste Water Mgmt. Dist.*, 177 F.3d 351 (5th Cir. 1999), for the proposition that "substantial compliance" is not sufficient to satisfy a contractual notice requirement. In *PYCA*, the subcontractor sued the wastewater management district for breach of contract related to electrical work performed on the construction of a wastewater treatment facility. *Id.* at 357. The District adjusted the cost and time for performance with the contractor, which resulted in a loss to the subcontractor. The subcontractor (through the contractor) disputed a unilateral change order issued by the District, however, it did not invoke the specific claims procedure set out in the contract for disputes regarding change orders. *Id.* The contractor argued technical compliance with the claims procedure should be excused because the District had actual notice of the dispute, and the District did not suffer any prejudice as a result of its non-compliance. *Id.* at 368. The Fifth Circuit held strict compliance was mandatory and would not excuse the contractor's failure to comply with the provision just because the District did not suffer prejudice. *Id.* at 369.

The Fifth Circuit, however, did not set forth a bright line rule, as Dresser implies, and the facts in *PYCA* supported strict compliance more so than the facts here. The Fifth Circuit relied on several facts in *PYCA* that are not found here. For instance, the District cited the contract provision numerous times in its notices to the contractor, informing him that the claims procedure was

7

mandatory if he desired to dispute the change order. Despite these references to the contract, the contractor failed to comply. *Id.* The Fifth Circuit, thus, rejected the substantial compliance argument because the communications between the parties regarding the disputed change order "indicate[d] an awareness by both sides to the dispute that the contractual provisions in CA.28 governed this controversy." *Id.* at 371. In this case, neither party invoked any contractual provisions at any time regarding the resolution of vibration. The contract in *PYCA* also explicitly required strict compliance; by failing to make a claim in accordance with the contract, the contractor was "deemed to have accepted such . . . determination, or decision as being fair, reasonable, and finally determinative of his obligations and rights under the Contract." Further, "[t]he Contractor agree[d] that unless such statement [of breach of contract] is made and filed as so required, his claim for damages shall be deemed waived, invalid and unenforceable, and [ ] he shall not be entitled to any compensation for any such alleged damages." *Id.* at 369–70. Unlike the notice provisions here which only required written notice, the contract provisions in *PYCA* mandated strict compliance or waiver would result. The Fifth Circuit found that "where the basis for waiver is unambiguously set forth in the contract, the provision is enforceable." *Id.* at 370. Finally, the Fifth Circuit recognized that equitable considerations may require a departure from strict compliance. In *PYCA*, the contractor's failure to comply was "not a mere technical defect." *Id.* at 369. Notably, the Fifth Circuit stated: "While we conclude that the District suffered no prejudice by [contractor's] failure to file a formal, written protest, that conclusion, however, does not end our inquiry. While we might be inclined to construe a contract equitably where a minor failure to comply with a provision occurred, such was not the case here." *Id.* As this Court discussed in its Memorandum Opinion and Order on summary judgment, strict compliance with a notice provision is not required if the

receiving party had actual notice and the purpose of the notice provision is satisfied (i.e. giving Dresser an opportunity to cure). The *PYCA* court recognized that such equitable considerations are necessary when strict compliance works an injustice. *Id.* at 371, n.30. (taking into account equitable considerations regarding the contractor and subcontractor withholding necessary information for the District to adjust the cost of the change and suggesting a possibility of excusing strict compliance if an injustice would occur).  Thus, the Court does not find this case to be directly on point given the circumstances in this case.

The same evidence that supported the jury's finding that STEC gave effective notice under the contract also applies to Dresser's argument that because STEC failed to give notice under Section 13.03B, it waived its claim to reimbursement. The jury rejected Dresser's argument that STEC's communications and conduct showed an intentional relinquishment of a known right. Credible evidence was presented at trial indicating that STEC provided notice to Dresser regarding the vibration and its hiring of outside consultants, and when viewed in the light most favorable to the jury's verdict, it is not so strongly and overwhelmingly contradicted by the evidence presented at trial on this issue to render it unreasonable.

Dresser also argues that STEC failed to request or obtain a finding on whether it gave notice under Section 13.03B or whether its notice substantially complied with Section 13.03B.  Dresser believes the notice question posed to the jury related only to the notice provision of Section 13.03A, which required STEC to notify Dresser that the equipment was defective.  Dresser sought, and the Court denied, a piecemeal jury charge related to each notice provision within the contract.  Instead, the Court instructed the jury in the "Law of the Case" that: "Dresser Rand denies STEC gave effective notice as required by *various provisions* of the contract . . . and denies that STEC gave

9

notice to Dresser Rand prior to hiring outside experts." The jury charge also set forth that it was "undisputed that STEC did not give written notice to Dresser Rand in accordance with the terms of the contract." Question 3 then inquired of the jury: "Was South Texas Electric Cooperative's notice of the defective equipment effective and in substantial compliance with the contract?", to which the jury answered "Yes."[3] "Generally, a trial court is afforded great latitude in the framing and structure of the instructions and special interrogatories given to the jury." *Barton's Disposal Serv., Inc. v. Tiger Corp.*, 886 F.2d 1430, 1434 (5th Cir.1989). The Court found the broad form notice question was sufficient to address each of Dresser's contentions that STEC did not comply with various notice provisions of the contract. Therefore, no additional jury finding relating specifically to Section 13.03B was necessary. When viewed as a whole, the charge properly guided the jury's deliberations regarding all the notice provisions in the contract.

## II.  Dispute Resolution Procedure

Dresser next argues it is entitled to judgment as a matter of law because STEC failed to comply with the contractual dispute resolution procedures. The dispute resolution procedure in Section 9.04 was a condition precedent to pursuing any remedies at law. Because STEC failed to follow the Section 9.04, Dresser contends, it was barred from pursuing its breach of contract and warranty claims. Dresser believes that Court misstated the law when it instructed the jury that "[f]ailure to comply with a condition precedent will be excused if it involves an extreme forfeiture or penalty, and the occurrence of the condition precedent forms no essential part of the exchange for a party's performance." Alternatively, Dresser asserts the Court erred in giving this instruction because the condition precedent did not result in an extreme forfeiture and it did form an essential

---

[3] *See* dkt. #48 for the Charge of the Court and dkt. #52 for the jury verdict.

part of the exchange for the party's performance. Further, there was legally insufficient evidence to support the jury's answer to Question 6, which found that STEC's failure to comply with Section 9.04 was excused.

The Court already ruled that STEC's failure to comply with the contract's dispute resolution procedure was legally excused in its Memorandum Opinion and Order denying motion for summary judgment. Despite this, Dresser was allowed to argue and the jury heard evidence about STEC's failure to comply with the dispute resolution procedure. The jury was instructed on the proper law concerning conditions precedent, to which the jury again rejected Dresser's dispute resolution argument. *Varel v. Banc One Capital Partners, Inc.,* 55 F.3d 1016, 1018 (5th Cir. 1995) ("Texas courts excuse non-performance of a condition precedent if the condition's requirement will involve extreme forfeiture or penalty and its existence or occurrence forms no essential part of the exchange for the promisor's performance.") (citations omitted). At trial, John Packard testified that the dispute resolution procedure was not central to the object of the contract. (Vol. II, p. 382). He, moreover, believed that invoking the dispute resolution procedure at the time he realized the extent of the damage caused by the vibration would be futile given Dresser's prior performance. The jury also heard evidence that barring STEC from recovering its repair costs would be an extreme forfeiture because STEC had spent over $800,000 diagnosing and fixing the vibration in the turbine. (Vol. II, p. 333). The Court finds there was sufficient evidence to support the jury's verdict.

### III.   Jury charge claims

Dresser additionally makes various objections to the jury charge. It asserts that the Court erred in instructing the jury under the "Law of the Case" that "STEC claims Dresser Rand breached the contract by failing to provide a steam turbine free of manufacturing defects and adequate

11

technical services when the turbine was installed." Dresser argues the inclusion of this statement improperly suggested to the jury that STEC was entitled to recover if Dresser initially delivered a defective turbine, regardless of its compliance with the contract. The Court agreed with Dresser in the charge conference in this regard and did not use the language "when the turbine was installed" in the charge submitted to the jury. This argument is moot.

Next, Dresser contends the Court erred in instructing the jury that failure to comply with the contract can be excused by waiver or estoppel. STEC never pled waiver or estoppel in its pleadings, disclosures or the joint pretrial order. The Court has not found, nor has Dresser pointed to any law supporting its argument that a plaintiff is required to plead affirmative defensive theories. Even so, because the jury found that STEC substantially complied with the notice provisions of the contract, the jury never considered the excuse theories proposed in Question 4. Therefore, there is no error in the outcome of this trial based on the submission of STEC's excuse theories.

Dresser also asserts there was legally insufficient evidence or, alternatively, the jury's verdict was against the great weight of the evidence to support the findings that Dresser breached the contract or warranty. The entire trial centered around the parties' obligations and conduct regarding the installation and operation of the turbine. The evidence revealed that Dresser was aware of the excessive vibration in the turbine before and after installation, and as a result, the turbine did not operate according to the contract specifications. (Vol. III, pp. 637–38). There was also evidence that the turbine was not installed according to Dresser's specifications and it did not properly oversee the construction of the turbine as required by the contract. (Vol. III, pp. 617–18). Further, when the turbine was reassembled precisely according to Dresser's specifications, it performed properly. Lastly, STEC felt it was necessary to hire outside experts because of Dresser's dilatory response to

the vibration problem. (Vol. III, p. 590–93, 634–35). Thus, there was substantial evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment could determine that Dresser breached the contract and its warranties.

Dresser also argues Question 3 assumes facts not in evidence. That is when Question 3 inquired: "Was [STEC]'s notice of the defective equipment effective and in substantial compliance with the contract?", it assumed that equipment was defective. While no specific finding was made regarding whether the turbine was defective, the entire case proceeded on the premise that the turbine was defective. Dresser never denied that point. The jury's findings in Questions 1 and 2 that Dresser breached the contract and warranty subsume a finding that the turbine was defective. There was certainly plenty of evidence that the turbine experienced excessive vibration that prevented it from operating at full capacity. (Vol. I, pp. 210–11).

While Dresser posits various other arguments, the Court finds that they do not undermine the outcome of the trial. *Taita Chem. Co., Ltd. v. Westlake Styrene, L.P.*, 351 F.3d 663, 667 (5th Cir. 2003). "If the jury instructions are 'comprehensive, balanced, fundamentally accurate, and not likely to confuse or mislead the jury, the charge will be deemed adequate.'" *Koonce v. Quaker Safety Prods. & Mfg. Co.*, 798 F.2d 700, 719 (5th Cir. 1986) (quoting *Scheib v. Williams-McWilliams Co.*, 628 F.2d 509, 511 (5th Cir. 1980)). "The crucial issue on review is whether the jury had an understanding of the issues and its duty to determine those issues." *Id.* Because the charge and verdict form were based on the evidence and legal issues adduced at trial, the Court does not find that they were either erroneous or unfairly prejudicial.

### IV. Damages

Finally, Dresser contends the evidence is legally insufficient evidence to support the damages

awarded, or, alternatively, the jury's award was excessive and against the great weight of the evidence. A strong presumption exists in favor of affirming a jury's award of damages, and a verdict may be overturned only upon a clear showing of excessiveness or upon a showing that the jury was influenced by passion or prejudice. *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995). Dresser maintains that no evidence supported the finding that approximately $350,000 of damages were incurred as a result of problems that manifested before the end of the warranty period. Packard, however, testified that all the damages STEC sought in this lawsuit were a direct result of the excessive vibration that occurred from the moment the turbine began operation. When the turbine was shut down, certain costs for standard maintenance unrelated to the vibration were segregated from the costs attributable to the vibration. (Vol. II, pp. 316–17). Packard reviewed the charges of each of the outside consultants he hired to diagnose and fix the vibration and testified regarding the necessity and reasonableness of the costs incurred by STEC. (Vol. II, pp. 316–35).

Further, Dresser argues STEC improperly relied on John Packard to testify about damages because he was not properly designated to testify regarding the nature and extent of damages. The Court overruled Dresser's objection to his designation and his qualifications to give testimony regarding damages. After taking Packard on voir dire outside the presence of the jury, it was revealed that Packard was familiar with the requirements for maintaining the turbines, including repairs, as STEC's plant manager. He personally sent out bids for the work, observed the repair work being performed, reviewed and paid the bills, and determined that the costs were reasonable and necessary. (Vol. II, pp. 260–73). The jury also heard evidence from Lloyd Strown that all the damage to the turbine was a direct result of the excessive vibration, which occurred during the warranty period. (Vol. III, p. 713). As further evidence that the jury properly considered each of

the costs sought by STEC, it only awarded $706,406.46, which presumably equaled STEC's repair costs minus the crane charges which the jury subtracted based on the contract provision making the Owner fully liable for crane costs. Thus, the evidence fully supports the jury's award of damages, and the Court does not find the award to be excessive.

## Conclusion

Accordingly, the Court finds no persuasive reason to overturn the jury's verdict. Dresser Rand's Motion for Judgment as a Matter of Law, To Alter or Amend Judgment, or For a New Trial (Dkt. #58) is DENIED.

It is so ORDERED.

SIGNED this 23rd day of June, 2008.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE